# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

SHANTA, INC. D/B/A GREEN  )
CARPET INN,                )
                           )
          Plaintiff,       )
                           )
v.                         )          CIV-15-872-R
                           )
NAUTILUS INSURANCE         )
COMPANY,                   )
                           )
          Defendant.       )

## ORDER

Defendant, Nautilus Insurance Company, seeks summary judgment on Plaintiff's bad faith claim and its request for punitive damages. (Doc. No. 55). Plaintiff responded in opposition to the motion, and Defendant has filed a reply in support of its position. Having considered the parties' submissions, the Court finds as follows.

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the

non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." N*eustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

Plaintiff alleges Defendant breached a contract of insurance issued by Defendant by failing to pay certain losses incurred as a result of May 31, 2013 tornado that damaged the insured property, comprised of a motel and restaurant. Plaintiff employed a public adjuster, H&S, which informed Defendant of the storm-related losses on June 3, 2013. In response to the notice, Defendant assigned an independent adjusting firm, Great Plains Inspection Company, Inc., to assess the losses. Elvis Spoon, the adjuster for H&S, inspected the property and concluded the roof of the entire motel structure needed replacement. According to the notes in the claims file from June 26, 2013, "[t]he main reason is the new code requires thicker sheathing and if we patch, then there will be a difference in the roof, and the contractor will not warranty it." Doc. No. 68-3, p. 3. Mr. Spoon conveyed his conclusion to the Defendant.

On June 6, 2013, Larry Hickok of Great Plains inspected the property on behalf of the Defendant. Elvis Spoon was present for the inspection. Hickok opined that the damage to the roof could be repaired and did not require replacement. Mr. Hickok submitted an estimate to Defendant indicating a replacement cost value of $139,395.24, which excluded certain of the guest rooms he was unable to inspect on June 6, 2013. Faced with a disagreement between adjusters regarding repair versus replacement, the Nautilus claims

examiner, Bryant Wilcox, authorized Larry Hickok to retain an engineer to inspect the premises and render an opinion. Hickok retained Engineering Inc., whose principal, Shawn Thompson, P.E., inspected the property on July 10, 2013; he was accompanied by Mr. Hickok. Mr. Hickok was able to access the previously inaccessible guest rooms, which permitted him to provide Defendant with a supplemental estimate of damage.[1]

On July 15, 2013, Defendant issued a check to Plaintiff for $72,856.62, representing the actual cash value, $139,395.24, less depreciation and a $38,000 deductible, as estimated by Hickok's original estimate. That same day, Hickok provided a supplemental estimate addressing the guest rooms he inspected on July 10, 2013, indicating an additional $14,458.89 in recoverable loss to the property.[2] On July 19, 2013, Elvis Spoon provided

---

[1] Thompson's August 21, 2103 report included the following:

> Based on this inspection, which included visual observations and measurements, my professional opinions of the damage to these motel buildings as a result of high winds from the recent May 21, 2013 storm is expressed in the following conclusions:
> 1. Damage has occurred to a portion of the wood roof deck and bituminous roof covering on the flat roof, and to a limited number of asphalt composition shingles on the sloped gable shaped roof surfaces, and all of these are capable of and would respond well to repairs
> 2. Damage has occurred to a limited area of vinyl soffit on the west side second floor walkway
> 3. A limited amount of water intrusion into the building has occurred at the north side roof damage affecting the gypsum ceiling and wall board. Water damage to the wood decking and framing, however is the result of the long term water intrusion into these areas and Is not due to the recent storm
> 4. Damage has occurred to a portion of the brick veneer on a north side wall.
> All materials removed including metal panels and wind girts should be replaced with material of the same size, thickness, and quality in accordance with the requirements of the International Residential Building Code as adopted by the local municipality and/or the State of Oklahoma.

Doc. No. 55-2.

[2] Defendant concluded that the damage to the restaurant did not exceed the deductible on the structure, and therefore tendered no payment for damage to that structure.

Defendant with a copy of his estimate for repairs to the motel and restaurant, the net claim totaled $773,275.31.

On August 6, 2013, Defendant received from Plaintiff a Sworn Statement in Proof of Loss. Contrary to the $773,275.31 indicated in Mr. Spoon's estimate, "The Amount Claimed" on the form was $87,324.51. The form was signed by Mr. Patel, and he indicated that he received assistance from Mr. Spoon in completing the form.[3] On August 7, 2013, Defendant tended a check for $14,458.89 to Plaintiff consistent with Mr. Hickok's supplemental estimate of July 15, 2013. Defendant's payments to Plaintiff totaled $87,615.51.

On September 9, 2013, Defendant's internal claims adjuster Bryant Wilcox sent a letter to Plaintiff's adjuster, Elvis Spoon, with a copy of the Thompson report. The letter stated "[a]s you are aware the flat roof and comp shingles areas are repairable, which we have estimated and indemnified the insured. However, the engineer also pointed out some area's (sic) of damage that were not a result of this storm. The engineer discovered rot, due to long term exposure to water. . . . Unfortunately, rot is excluded and we will be unable to assist with the repairs to any rotted materials." Doc. No. 55-2, Ex. 2-J. Thereafter, Defendant reiterated to Plaintiff's public adjuster that the claim remained open for Plaintiff to recoup recoverable depreciation. Plaintiff submitted no additional proof of loss to Defendant regarding the roof or the structure.

---

[3] Plaintiff does not dispute this is the sole proof of loss it submitted to Defendant. He asserts without citation to evidence that the adjuster who procured the Proof of Loss misrepresented the effect thereof. Plaintiff, however, does not identify the adjuster, and when asked in deposition about the submission Plaintiff testified that it was his signature on the page and that he submitted it to Nautilus, through Mr. Spoon. Doc. No. 55-3, p. 110. He further testified that he and Mr. Spoon worked together in completing the form. *Id*. at 112.

With regard to business personal property and loss of business income coverage related to the claim, Defendant sought information from Plaintiff via Elvis Spoon requesting inventory of the business personal property and copies of tax filings and profit and loss statements. Defendant retained a certified public accountant to assist with the claim. However, because Defendant received no response prior to the onset of litigation, save for submission of a "Daily Report" for May 31, 2013, identifying occupancy for the day of the tornado, the accountant did not calculate businesses losses at that time. Defendant, either directly or via the CPA, sent letters requesting information on these losses to Plaintiff, Mr. Spoon, or Plaintiff's counsel on September 26, 2013, December 2, 2013, January 3, 2014, February 10, 2014, March 10, 2014, March 12, 2014, May 6, 2014, May 13, 2014, July 7, 2014, August 1, 2014, and September 9, 2014, all without response.[4] Plaintiff filed this action on May 29, 2015, in the District Court of Oklahoma County.

Plaintiff seeks relief under theories of breach of contract and bad faith breach of contract, requesting compensatory and punitive damages, as well as declaratory relief. Defendant seeks summary judgment on Plaintiff's bad faith claim and argues that the evidence herein is not sufficient to support an award of punitive damages.

> In *Christian v. American Home Assurance Company*, 1977 OK 141, 577 P.2d 899, this Court adopted the rule that an insurer has an implied duty to deal fairly and to act in good faith with its insured. The violation of this duty gives rise to an action in tort for which consequential damages, as well as punitive damages, may be sought. *Id.*, at 904. We did not hold that an insurer breaches this duty merely by litigating a claim or by receiving a judgment against it in an amount larger than it offered its insured. Tort liability is to be imposed only upon a clear showing "that the insurer

---

[4] During this time both Defendant and its accountant were informed via letter that Plaintiff had retained counsel.

unreasonably, and in bad faith, withholds payment of the claim of its insured." *Id.*, at 905.

*Falcone v. Liberty Mut. Ins. Co.*, 2017 OK 11, ¶ 10, --- P.3d ---, 2017 WL 587321 (Okla. 2017). In addressing whether to pay a claim, the insurer must conduct an investigation that is "reasonably appropriate under the circumstances." *Willis v. Midland Risk Ins. Co.*, 42 F.3d 607, 612 (10th Cir. 1994)(quoting *Buzzard v. Farmer ins. Co.*, 824 P.2d 1105, 1109 (Okla. 1991)). Furthermore, "[w]hen a plaintiff bases a bad faith claim on an inadequate investigation theory, 'the insured must make a showing that material facts were overlooked or that a more thorough investigation would have produced relevant information.'" *Sellman v. AMEX Assur. Co.*, 274 Fed.Appx. 655, 658 (10th Cir. 2008)(unpublished)(quoting *Timberlake Cons. Co. v. U.S. Fidelity and Guar. Co.*, 71 F.3d 35, 345 (10th Cir. 1995). The main focus of this dispute is whether Defendant acted in bad faith by virtue of the amount it paid on Plaintiff's claim with regard to the roof the of motel.[5] Plaintiff also contends Defendant failed to timely pay business income losses. The Court will address the issues in turn.

Plaintiff first argues that Defendant manufactured a dispute to avoid payment of its claim, asserting that Nautilus improperly relied on a 2011 hail damage claim Plaintiff pursued against its previous insurer. Plaintiff asserts Defendant attempted to create the appearance of a dispute, although the parties admit that Defendant did not rely on the prior claim or any prior damage as a basis for denying the 2013 claim. Within its rights and

---

[5] Although there are other discrepancies with regard to the amount tendered by Defendant and the estimate provided by Plaintiff's public adjuster, the parties focus on the roof.

under its obligation to conduct an investigation, Defendant made inquiry into the contours of Plaintiff's 2011 claim for hail damage. Defendant ultimately concluded the 2011 claim did not impact assessment of the 2013 claim because Nautilus had accepted the risk when it issued its Policy. Mr. Wilcox testified that Defendant's payment of the claim herein was not reduced as a result of the 2011 claim and Defendant does aver otherwise. As such, the Court concludes that Plaintiff's contention that Defendant relied on an improper defense to avoid payment does not support its bad faith claim. The remaining question is whether Defendant conducted a reasonable investigation in adjusting Plaintiff's claim.

Plaintiff argues, "[m]ore concerning is the fact that Nautilus never investigated the reason given by Plaintiff's public adjuster that the roof could not be repaired and had to be replaced because of building code requirements. Despite knowing this contention, Nautilus never investigated whether applicable building code would allow for repair of the damaged roof at the Motel." Doc. No. 72, p. 2. On June 26, 2013, Plaintiff's public adjuster, Elvis Spoon, conversed with the claims adjuster, Bryant Wilcox. As noted above, the claim file indicates Spoon's opinion "that the roof cannot be patched, contractor indicates he can patch it but there is no warranty, our IA (according to the PA) indicates the roof can be patched." "The PA is indicating that the entire old section needs to be replaced[.] T[he] main reason is the new code requires thicker sheathing and if we patch then there will be a difference in the roof, and the contractor will not warranty." Doc. No. 68-1. The claims diary entry for July 3, 2013 notes the disagreement between the opinions of Spoon and Hickok, and indicates that Nautilus has "retained a structural engineer to examine the roof and confirm a repair/replace method." *Id.* The relevant portions of the structural engineer's

report corroborate the opinion of Defendant's independent adjuster that repair rather than replacement of the roof was a viable option.[6]

Accordingly, in July 2013, Defendant had information about two competing remedies, repair or replacement. Engineering Inc had inspected the roof and according to Mr. Hickok agreed with his assessment that repair was appropriate. Defendant received the estimate from Plaintiff's public adjuster on July 19, 2013, listing roof replacement and additional necessary repairs far in excess of the amount indicated by Mr. Hickok. Before the official report of Engineering Inc. arrived, Plaintiff submitted a Sworn Proof of Loss on August 6, 2013, seeking a total of $87, 324.51. This is the only proof of loss Plaintiff submitted to Defendant. Nautilus, having already tendered $72,865.62, issued a check for $14,458.89, for a total of $87,324.51, the amount contained in Plaintiff's proof of loss.

The Court finds that Defendant is entitled to summary judgment with regard to Plaintiff's bad faith claim. Plaintiff complains about an inadequate investigation, however, it points to no relevant information that would have altered the outcome of the decision. Although Defendant contends Mr. Wilcox should have made specific inquiry regarding building code, there is no dispute that both the adjuster and engineer retained by Defendant opined that repair was an option. There is no evidence in the record beyond the conflicting opinions that existed at the time the claim was processed regarding building code and whether it mandated replacement of the entire roof as a result of the tornado damage.

---

[6] Mr. Wilcox, on behalf of Defendant, conceded that the Engineering Inc. report does not specify whether code required replacement of the decking and that Mr. Wilcox did not know the answer to the question. Doc. No. 72-2, Deposition of Wilcox, p. 109. Plaintiff, however, presents no evidence in response to the motion for summary judgment regarding what the building code required beyond the statements contained in the claims file.

Furthermore, Plaintiff, having recovered the sum requested in his proof of loss could not expect Defendant to continue to question whether replacement was necessary when it appeared Plaintiff had abandoned the issue and accepted payment.

Furthermore, Plaintiff's bad faith claim alleging that Defendant failed to timely pay business income losses is without merit. Prior to the onset of this litigation, and more specifically, Defendant's August 2016 Motion to Compel, Plaintiff had submitted to Defendant its occupancy record for a single date, May 31, 2013. This information, which excluded necessary factors for calculating lost income, such as the motel's average occupancy rate and how long rooms were unavailable to rent as a result of tornado damage, provided an insufficient basis to permit calculation of the amount owing under the Policy. Defendant and its accountant made repeated inquiry of Plaintiff through his public adjuster, and later counsel, without response.[7] After Plaintiff provided certain of the documents to Defendant, as compelled by the Court's Order, Defendant was able to submit the information to the accountant it had retained in 2013. He calculated the lost business income, and provided Defendant with a report in October 2016. Defendant tendered payment based on the report in January 2017. Plaintiff's evidence fails to establish bad faith by Defendant with regard to business income losses and the delay between October

---

[7] The Court assumes Plaintiff has abandoned any claim for business personal property; the issue is not addressed in response to the motion for summary judgment. Regardless, Nautilus made repeated inquiry of Plaintiff regarding an inventory of such property and Plaintiff never filed a proof of loss or provided an inventory. Accordingly, Defendant's failure to tender payment for business personal property cannot support a claim for bad faith breach of the contract.

2016 and January 2017 provides no basis for concluding that Defendant acted in bad faith, especially in the absence of cooperation by the Plaintiff.[8]

Finally, the granting of summary judgment on the issue of bad faith moots the issue of punitive damages. *See* Okla. Stat. tit. 23 §9.1.

For the reasons set forth herein, the Court hereby **GRANTS** Defendant's Motion for Summary Judgment.

**IT IS SO ORDERED** this 8th day of March 2017.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE

---

[8] To the extent Plaintiff complains about Defendant's reliance on Mr. Hickok with regard to calculation of business income loss, its complaints are without merit. The testimony was that Mr Hickok could provide information about the duration of repairs, that is how long rooms were unavailable to be rented. Plaintiff's contention that Defendant relied on a person admittedly unqualified to render an opinion is a mischaracterization of the evidence. To the extent Plaintiff complains about Mr. Wilcox's actions after this litigation was filed, or his lack of knowledge regarding proceedings during the course of litigation, it is undisputed that once the case was filed he was no longer the adjuster.